# IN THE UNITED STATES COURT OF APPEALS

# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Andrea Boxill, | : | |
| Plaintiff-Appellant | : | |
| -vs- | : | Case No. 18-3385 |
| James O'Grady et al., | : | On Appeal From The Southern District of Ohio Civil Action No. |
| Defendant-Appellees | : | 2:16-CV-00126 |

_____

## BRIEF OF PLAINTIFF-APPELLANT

_____

Michael Garth Moore (025047)
341 South Third Street, Suite 100-204
Columbus, Ohio 43215
Telephone 888-318-0075
Fax: 888-318-0075
mike@mgmoorelaw.com

_Attorney for Plaintiff-Appellant_

## ORAL ARGUMENT REQUESTED

i

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Plaintiff-Appellant, Andrea Boxill, a natural person, is not required to file a corporate disclosure statement by Rule.

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT…………...………... 1

STATEMENT OF JURISDICTION…………………………………….….. 1

STATEMENT OF THE ISSUES…………………………………………… 2

STATEMENT OF THE CASE……………………………………….......… 3

SUMMARY OF ARGUMENT……………………………………….....… 9

ARGUMENT OF LAW……………………………………………….…. 10

    I.     INTRODUCTION AND STANDARD OF REVIEW……............. 10

    II.    THE TRIAL COURT ERRED IN DISMISSING THE PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS: SECOND, THIRD AND FOURTH CLAIMS……………...….….. 12

    III.   THE TRIAL COURT ERRED IN DISMISSING THE FIFTH AND SIXTH CLAIMS, ASSERTING GENDER AND/OR RACE-BASED HOSTILE WORK ENVIRONMENT AGAINST ALL DEFENDANTS……………………………………...………... 17

    IV.   THE TRIAL COURT ERRED IN DISMISSING THE CLAIM OF RETALIATION UNDER SECTION 1981 THROUGH SECTION 1983……………………………………………………….….......  21

    V.    THE TRIAL COURT ERRED IN DISMISSING THE FIRST CLAIM: CIVIL CONSPIRACY UNDER SECTION 1983……... 22

CONCLUSION…………………………………………………………….. 24

CERTIFICATE OF COMPLIANCE………………………………………. 25

CERTIFICATE OF SERVICE…………………………….………………. 25

DESIGNATED RELEVANT DOCUMENTS…………………...………... 26

# TABLE OF AUTHORITIES

## Cases

*Arista Records, LLC v. Doe 3,*
          604 F.3d 110, 120 (2d Cir. 2010)……………………………………… 16

*Arrow v. Fed. Reserve Bank of St. Louis,*
          358 F.3d 392, 393 (6th Cir. 2004)………………………………...11, 12

*Bazzi v. City of Dearborn,*
          658 F.3d 598, 602 (6th Cir. 2011)………………………….……… 23

*Bell Atlantic Corp. v. Twombly,*
          550 U.S. 544, 555 (2007)……………………………………… 12, 16

*Conley v. Gibson,*
          355 U.S. 41, 45-46 (1957)…………………………………… 11, 12

*Crawford v. Columbus State Comm. College,*
          196 F. Supp. 3d 766, 778 (S.D. Ohio 2016)…………………..… 14, 15

*Doe ex rel. Doe v. City of Roseville,*
          296 F.3d 431, 439 (6th Cir. 2002)…………………………….. 16, 20

*Dye v. Office of Racing Commission,*
          702 F.3d 286, 305 (6th Cir. 2012)…………………………….... 12, 14

*Erickson v. Pardus,*
          551 U.S. 89, 93 (2007)…………………………………………… 12

*Farhat v. Jopke,*
          370 F.3d 580, 599 (6th Cir.2004)…………………...…………….. 22

*Fritz v. Charter Township of Comstock,*
          592 F.3d 718, 725-26 (6th Cir. 2010)........................................ 14

*Handy-Clay v. City of Memphis,*
          695 F.3d 531, 540 (6th Cir. 2012)……………………………… 15

*Harris v. Am. Postal Workers Union*,
    198 F.3d 245 (6th Cir. 1999)……………………………………...……… 11

*Harris v. Forklift Sys, Inc.*,
    510 U.S. 17, 21 (1993)……………………………………...……………… 18

*Hawkins v. Anheuser Busch, Inc.,*
    517 F.3d 321, 332 (6th Cir. 2008)……………………………….……… 19

*Hooks v. Hooks*,
    771 F.2d 935, 944 (6th Cir.1985)………………………..…………….…….. 23

*Jackson v. Quanex Corp.*,
    199 F.3d 647, 661 (6th Cir. 1999)………………………………….……… 19

*Jordan v. City of Cleveland*,
    464 F.3d 584, 597 (6th Cir. 2006)…………………………….…… 18, 19

*King v. Zamaria*,
    680 F.3d 685-86 (6th Cir. 2012)……………………………………… 14

*McCormick v. Miami University,*
    693 F.3d 654 (6th Cir. 2012)…………………………………………… 21

*McGlone v. Bell*,
    681 F.3d 781, 718, 727 (6th Cir. 2012)……………………...……… 11

*Park v. Thompson*,
    851 F.3d 910, 928-29 (9th Cir. 2017)…………………………… 16, 17

*Sharpe v. Curtin*,
    259 F.3d 259, 267-68 (6th Cir. 2003)……………………….…….. 17

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506, 512 (2002)……….…………………………….…….. 12

*Thaddeus X v. Blatter*,
    175 F.3d 378, 394-396 (6th Cir. 1999)…..……………………..……… 13

*United States v. Barger*,

931 F.2d 359, 369 n.6 (6th Cir. 1991)…..……………………………….... 23

*Weberg v. Franks*,
229 F.3d 514, 526 (6th Cir.2000)…………..……………………… 22, 23

*Williams v. General Motors Corp.*,
187 F.3d 553, 565 (6th Cir. 1999)…….………………………………..… 19

*Wurzlebacher v. Jones-Kelly,*
675 F. 3d 580, 583 (6th Cir. 2012)……………………………….…. 13


**Statutes**

42 U.S.C. § 1981-1983……………………………………... 1, 2, 10, 16, 17, 21, 22

42 U.S.C. § 1291……………………………………………………….. 1

**Rules**

Fed.R.Civ.P.  12(b)(6)……………………………………………….. 11 ,15

Fed.R.Civ.P.  8(a)(2)………………………………………………….. 12

Fed.R.Civ.P.  59…………………………………………………….... 2

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This appeal presents important questions regarding (1) the application of 42 U.S.C. §1981 through 42 U.S.C. §1983; and, (2) the sufficiency of allegations supporting claims of First Amendment retaliation and civil conspiracy under 42 U.S.C. §1983. Oral argument will allow full development of these issues.

## STATEMENT OF JURISDICTION

This Court's jurisdiction over the dismissal of the case below rests upon 28 U.S.C. §1291. This civil rights action was filed February 10, 2016, asserting claims brought both by Appellant, Andre Boxill, and Teresa Barry. R. 1, Page ID range 1 – 25. Barry had a separate action pending, Civil Action No. 2:14-cv-2693, *Barry v. O'Grady, et al.* Plaintiffs moved to consolidate the two actions, but that motion was denied.

Subsequently, on April 5, 2017, Appellant filed a First Amended Complaint, redacting the claims brought by Barry, effectively dismissing her from this case. R. 37, Page ID Range 282-293.

Defendants filed a Motion to Dismiss the First Amended Complaint, R. 38, Page ID Range 294-316.

The trial Court granted that Motion on March 30, 2018. R. 51, Page ID Range 412-449. This timely appeal followed. Notice of Appeal, R. 53; Page ID 451-452.

## STATEMENT OF THE ISSUES

Issue 1:      Did the trial Court err in granting judgment on the Second, Third and Fourth Claims: First Amendment retaliation?

Issue 2:      Did the trial Court err in granting judgment on the Fifth and Sixth Claims as to hostile work environment?

Issue 3:      Did the trial Court err in granting judgment on the Sixth Claim as to retaliation under 42 U.S.C. Section 1981 through 42 U.S.C Section 1983?

Issue 4:      Did the trial Court err in granting judgment on the First Claim: Civil Conspiracy?

## STATEMENT OF THE CASE

The facts governing this appeal are taken from the twelve (12) page, fifty-five (55) paragraph First Amended Complaint.

Andrea Boxill ("Plaintiff"), an African-American female, was formerly an employee of the Franklin County Municipal Court ("FCMC") in the position of Specialty Dockets Coordinator. First Amended Complaint ("FAC") ¶2, 19, R. 37; Page ID 282. In this position, she reported to Judge Scott Vanderkarr. *Ld., ¶*15.

This action was brought against FCMC Judges James P. O'Grady, Michael T. Brandt, James P. Green, former FCMC Judge Carrie Glaeden (collectively, "Defendant Judges"), and FCMC Court Administrator Emily Shaw. All Defendant Judges and Defendant Shaw are sued in their individual capacities. *Id., ¶¶*3, 4.

Plaintiff alleges that, at all times pertinent to this action, Defendant Judges Glaeden, Brandt, and Green were elected Judges. In 2013, Judge Green served as the FCMC's Administrative and  Presiding Judge. *Id.* Also in 2013, Judges Green and Glaeden formed the Court's Personnel Committee ("the Committee"), with Judge Glaeden serving as the Committee's Chairperson. *Id.* Both Judges Green and Glaeden continued serving on the Committee in 2014. *Id.* In 2014, Judge Brandt replaced Judge Green as the Administrative

and Presiding Judge. *Id.*

It was alleged that "individually, and through the Committee," Defendant Judges Green, Glaeden, and Brandt "controlled the terms and conditions of [Appellant's] employment, including, but not limited to, promotions, demotions, and termination." *Id.* In her role as the FCMC Administrator, Defendant Shaw reported to the Defendant Judges and possessed the authority to affect the terms and conditions of all FCMC employees, including Plaintiff. *Id.,* ¶14.

Before 2011, the Defendant Judges conceived a course of action intended to intimidate into silence female Court staff who might bring complaints about discriminatory or abusive treatment by individual Judges. *Id.,* ¶¶10-12. This plan was conceived in response to issues raised by two female FCMC staff, Brenda Williams and Michelle Ceneski, both of whom were subject to retaliation and subsequently separated from employment. *Id.*

Keith Bartlett, then Court Administrator, was delegated to carry out this plan. Defendant Shaw was, for a period of time, a subordinate of Bartlett. After Shaw replaced Bartlett as Court Administrator, her cooperation continued, and she also instructed her subordinates Abbie Armitage, Human Resources Manager, and Holly Gleason, Assistant Court Administrator, to execute the plan as well. *Id.*

After his election to the Court in November, 2011, Defendant O'Grady

began engaging in harassment of Ms. Boxill making hostile comments to her, both of a personal nature and about her work as Specialty Dockets Coordinator. *Id.,* ¶¶15-17. It was alleged that the comments were "sexist and racist allusions," similar to those that Defendant Judge O'Grady previously had directed at her when he previously served as Judge Vanderkarr's bailiff. *Id.* During the same time frame, Defendant Judge Brandt was "hostile and intimidating" towards her. *Id.*

Ms. Boxill began expressing her concerns to Judge Vanderkarr when Defendant Judge O'Grady's conduct began to interfere with her ability to succeed in her work. *Id.*, ¶18.  Vanderkarr was reluctant to take any action. *Id.*

When Defendant Judge O'Grady's harassment did not abate, Plaintiff reported his conduct, as well as Defendant Judge Brandt's hostility, to Keith Bartlett [who was then, still, the Court Administrator] and Defendant Green. *Id.,*¶19.  In both reports, Ms. Boxill expressed concern that  O'Grady's treatment of her *and her staff* was "motivated by her being an African-American female." *Id.* (emphasis added).

It was further alleged that, in the period leading up to April, 2013, Ms. Boxill continued to report ongoing harassment to Administrative Magistrate Katherine Graham and Human Resources Manager Abbie Armitage, more than one time. *Id.,* ¶20. No administrator or judge acted on her reports;

instead, each discouraged her from taking any action. *Id.*

From April 2013 until, and including, March 2014, it was alleged, Defendants began removing her responsibilities and diminishing her ability to function as Specialty Dockets Coordinator. *Id.,* ¶21. These changes were made in response to her reports of discrimination in order to create an intolerable work environment that would cause Plaintiff to resign or give Defendants a pretext to terminate her employment. *Id.*

At some point between April 2013 and March 2014, Ms. Boxill attended a meeting at which Defendant Shaw and Ms. Armitage were present. *Id.,* ¶ 22. During this meeting, Plaintiff learned that Defendants had given a male subordinate a $14,000-per-year salary increase. *Id.* Upon learning this, Ms. Boxill expressed that she felt she was being discriminated against because of an "old boy's network" that protected judges, including Defendant Judges O'Grady and Brandt. *Id.* It was alleged that Defendants ignored her concerns "because it was their intent to create an intolerable situation" for her. *Id.*

On March 17, 2014, Judge Vanderkarr wrote a letter reporting Defendant Judge O'Grady's conduct to Defendant Judge Brandt [who, by that time, had been elevated to Administrative and Presiding Judge], with copies to Defendant Shaw and Defendant Judge Glaeden. *Id.,* ¶23. In response to the letter, after conferring with the other Defendants, Defendant Judge Brandt

directed Defendant Shaw to inform Judge Vanderkarr that he needed to rewrite the letter to "tone it down." *Id.* Defendant Shaw actually penned the second letter which Vanderkarr signed, dated March 18, 2014. *Id.* The March 18th letter specifically identified Assistant Court Administrator Holly Gleason as *one* victim of Defendant Judge O'Grady's conduct, and concluded, "I am concerned that, if left unaddressed, Judge O'Grady's behavior may result in future litigation that could subject the Court to liability, possibly for the creation and continuation of a hostile work environment, and the payment of damages." *Id.* (emphasis added).

Defendants knew that Judge Vanderkarr's letters were memorializing complaints made to him by Plaintiff. *Id., ¶24.* As a result, on or around March 25, 2014, Ms. Boxill was formally demoted by Defendants in retaliation. *Id.* In addition, Ms. Gleason was appointed as her direct supervisor, and Gleason began imposing unwarranted scrutiny on Ms. Boxill and her staff at Defendants' direction. *Id.* Further, Defendant Judge O'Grady recruited a team of judges to monitor Ms. Boxill and her staff and announced that he was targeting the Specialty Dockets staff. *Id.*

Defendants began bypassing Ms. Boxill on issues that were rightfully hers to address, going instead to one of Plaintiff's Caucasian male subordinates who lacked her experience and qualifications. *Id.* Soon after receiving notice of

her demotion, Plaintiff attended a meeting with Defendant Judge Glaeden, during which she again expressed concerns of a hostile work environment and stated that she would not have been demoted if she were a white male. *Id.,* ¶¶25-26. Judge Glaeden dismissed Plaintiff's concerns. *Id.*

After her demotion in March 2014, knowing that her tenure at FCMC was being forced to an end, and suffering from great emotional distress, Ms. Boxill began seeking alternative employment. *Id.*

On August 6, 2014, Plaintiff resigned.

At the end of her employment at FCMC, Ms. Boxill requested an exit interview and demanded that Defendant Judges Glaeden and Brandt, and Human Resources Manager Abbie Armitage, attend. *Id.* Fr 27. During the exit interview, Ms. Boxill reiterated specific instances of harassment and intimidation by Defendant Judge O'Grady and again expressed that she believed his conduct was motivated by her gender and race. *Id.*

On September 10, 2014, Ms. Boxill participated in a telephone interview with Armitage, during which she was asked to elaborate on Defendant Judge O'Grady's conduct. *Id.,*¶28. Plaintiff did so, again expressing her belief that she was being discriminated against. *Id.* However, her complaints were never investigated and Defendants concealed her complaints from the full body of FCMC judges. *Id.,* ¶27.

## SUMMARY OF ARGUMENT

In dismissing the case, the trial Court adopted not only a crabbed, but incorrect, view of the allegations made in the First Amended Complaint. The Court dismissed the separate First Amendment retaliation claims against the individual Appellees [the Second Claim: Shaw; the Third Claim: Green, Glaeden and/or Brandt; the Fourth Claim: O'Grady] despite the document making specific allegations of the protected activity Ms. Boxill engaged in, the adverse actions taken, and the specific acts by the individual Appellants. The trial Court concluded that the first two elements were properly pleaded, but then, inexplicably, held that no specific individuals had been identified as engaging in the retaliatory actions.

Second, the Court ignored specific pleading of the creation of a gender and/or race-based hostile work environment which put each Appellant on notice of the claim against him or her, dismissing the Fifth and Sixth Claims. Indeed, the FAC asserted that the environment was so objectively toxic that Ms. Boxill's supervising judge, Scott Vanderkarr, wrote a letter to Appellants Shaw, Brandt and Glaeden which put them on notice of the Court's vulnerability to civil rights claims arising out of Appellant O'Grady's abusive conduct. This, it was alleged, was followed not by remediation, but by Ms. Boxill's formal demotion and the institution of unwarranted surveillance of her

and her staff, ultimately leading to her constructive discharge – simply an extension of the foregoing retaliation. The trial Court erred in dismissing this claim.

Third, the Court misapplied this Court's jurisprudence regarding the imposition of civil liability on individuals for violations of 42 U.S.C. Section 1981; and, in doing so, misread the allegations of the FAC. This decision was wrong, as the allegations illustrated above supported the retaliatory hostile work environment and constructive discharge as well.

Finally, the trial Court brushed aside the extensive allegations of the existence and implementation of a civil conspiracy to violated First Amendment rights under 42 U.S.C. Section 1983 in dismissing the First Claim. In so doing, the trial Court ignored the rule that not only are facts to be construed in the pleader's favor, but all reasonable inferences are to be so drawn as well. The Appellants were well on notice of the claim of civil conspiracy.

## ARGUMENT OF LAW

## I. INTRODUCTION AND STANDARD OF REVIEW

It is difficult, indeed, to conceive that a number of elected judges would engage in a practice of using intimidation to silence female court staff who might come forward with complaints of abuse and discrimination against individual

judges, and, in so doing, enlist court administration in that end. Certainly, it appears that the trial Court's entire opinion was colored by a sense of disbelief that such conduct might occur. Hence, the trial Court's initial observation on the civil conspiracy claim, that "Plaintiff asserts that Defendants *organized a sweeping scheme* to retaliate against any female employee who complained of abusive or discriminatory treatment…" ECF 51, Page ID 427-28 (emphasis added). The operative First Amendment Complaint did not make an allegation of a "sweeping scheme." That gloss was applied by the trial Court.

This writer trusts that, no matter how far-fetched seems the idea that judges could do what is alleged, this Court will treat the allegations as it would in any other case, with any other defendants.

A motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake. *McGlone v. Bell*, 681 F.3d 781, 718, 727 (6th Cir. 2012); *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999).

This court reviews a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). In order to survive a 12(b)(6) motion, the plaintiff's complaint must allege facts, which if proved, would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing the allegations, this Court "construe[s] the complaint in a light most favorable to the

11

plaintiff, accept[ing] all of the factual allegations as true and determine[s] whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Arrow*, 358 F.3d at 393.

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) reiterated that a plaintiff is not required to plead specific facts; instead, the statement need only "'give the defendant *fair notice of what the . . . claim is* and the grounds upon which it rests'" ((quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (emphasis added). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Id.* Thus, an inference of wrongdoing is sufficient -- it is to be left to the operation of the liberal discovery rules to define the facts and dispose of unmeritorious claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

## II.    THE TRIAL COURT ERRED IN DISMISSING THE PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS: SECOND, THIRD AND FOURTH CLAIMS

The FAC alleged alternatively that these Appellees [Second Claim: Shaw; Third Claim: Green, Glaeden and/or Brandt; Fourth Claim, O'Grady] retaliated against Ms. Boxill because she engaged in expression protected under the First Amendment.

The well-established elements of such a claim were correctly set out by the trial Court at ECF 51, Page ID 428-29: (1) that plaintiff engaged in expression protected under the First Amendment; (2) that plaintiff suffered an adverse action; and, (3) that the action was motivated, at least in part, by plaintiff's protected expression. *Wurzlebacher v. Jones-Kelly,* 675 F. 3d 580, 583 (6th Cir. 2012).

The trial Court held that Ms. Boxill had adequately asserted she engaged in protected expression in a number of instances. ECF 51, Page ID 431-432. It further concluded that the FAC sufficiently alleged adverse actions had followed upon her instances of protected expression, specifically, three events: (1) removal of job responsibilities and interference with her ability to function as Specialty Dockets coordinator: (2) formal demotion accompanied by unwarranted scrutiny after March 25, 2014; and (3) constructive discharge. Id., Page ID 433-434. The Court was no doubt correct in determining that any of these actions is sufficient to deter a person of ordinary firmness from engaging in protected expression – the necessary standard. *Thaddeus X v. Blatter,* 175 F.3d 378, 394-396 (6th Cir. 1999).

The Court, however, concluded that the claims must be dismissed because the FAC supposedly failed to allege the requisite causal connection. In addressing this issue, the Court properly cited this Circuit's case law which holds that causation may be proved by direct or circumstantial evidence. *Dye v. Office of Racing Commission,* 702 F.3d 286, 305 (6th Cir. 2012). The Court also noted that

temporal proximity is relevant to the circumstantial evidence supporting the finding of retaliatory motive. *King v. Zamaria,* 680 F.3d 685-86 (6th Cir. 2012).

Despite this acknowledgement of controlling authority, the Court held that the FAC "provides only vague, conclusory allegations that the three adverse actions she alleges were caused by "the Defendants," without alleging who did what." ECF 51, Page ID 436.

In so doing, the Court did not address the cases most directly on point, the first being *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 725-26 (6th Cir. 2010), which in reversing judgment for defendants on motion to dismiss the First Amendment retaliation claim, stated that

> While Plaintiff may not have pled specific facts to support her claim that Defendant Hudson specifically threatened her business, nor that he attempted to persuade Farm Bureau to terminate its contract with Plaintiff, there is certainly a set of facts which, if accepted by the trier of fact, would entitle [Plaintiff] to relief. It remains a question of material fact, discoverable through depositions of the parties involved, as to what the exact contents of the conversations were…. The complaint alleged that such threats were made, even if generally alleged, which is sufficient at this stage of the litigation both to put Defendants on notice of the claim and to raise a plausible claim of an adverse action.

Even more concerning is the Court's omission [though it cites the case in a footnote, Page ID 432] of any acknowledgment of *Crawford v. Columbus State Comm. College,* 196 F. Supp. 3d 766, 778 (S.D. Ohio 2016), which, in denying dismissal on a 12b6 motion, stated that

In most cases, "[a] defendant's motivation for taking action against the plaintiff is . . . a matter best suited for the jury." Handy-Clay, 695 F.3d at 545 (quotation omitted) [*Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012)]. As such, a plaintiff pleads sufficient factual allegations to withstand a motion to dismiss under Rule 12(b)(6) where "there is enough evidence . . . to support the proposition that the defendants knew of [the plaintiff's] protected speech" and "the chronology of events supports an inference of causation." Id. at 545-46. Here, Crawford's complaint satisfies both factors. The complaint alleges that Dean Schneider and Dean Hailu knew of Crawford's anti-abortion postings, and the chronology of events (warning, then monitoring, followed by a refusal to hire/failure to promote) supports an inference of causation.

*Crawford* was pled as was the FAC in the instant case – i.e., that both Defendants acted to deny Dr. Crawford the position he sought. Further, it was alleged in the instant FAC, as in *Crawford,* that not only was Ms. Boxill ultimately constructively discharged, but that the Defendants took actions -- i.e, removal of job duties, unwarranted scrutiny including Defendant O'Grady's specific targeting of Ms. Boxill and her staff – which constitute "incidents of misconduct that … may be relevant at trial to show a pattern of mistreatment on the job based on plaintiff's protected activities" which point to motive in the actionable conduct. *Dye, supra,* 702 F.3d at 305.

The FAC, as noted, *supra,* identified each Defendant's position, alleging that each had authority over the terms and conditions of Ms. Boxill's employment. It alleged that Ms. Boxill had made protected reports directly to Defendants Green, Glaeden and Shaw, that Brandt knew that she had made such reports, and that O'Grady specifically targeted her because of such reports.

15

Moreover, there was nothing vague about the allegations that all Defendants had acted to retaliate against Ms. Boxill. The FAC in fact made alternative allegations in the three Claims. Under the Second Claim, it is alleged that Shaw took retaliatory actions; under the Third, that Green, Glaeden and/or Brandt took the actions; under the Fourth Claim, that O'Grady took the actions. There was no vague, unfocused reference to all Defendants.

The Court's demand places an impossibly high hurdle before any plaintiff – how can one segregate actions among defendants who jointly control the conditions of employment when those facts are entirely within the possession of the parties sued? Indeed, individual liability under Section 1983 may be founded on allegations that supervisors had "participated, encouraged, authorized or acquiesced in" the constitutional violation. *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002)

"The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) Thus, "[b]ecause many of the relevant facts here are known only to the defendant, and in light of the additional facts alleged by Park, we conclude that she has pleaded sufficient facts

16

to state a plausible claim for civil conspiracy under Section 1983." *Park v.*

*Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017).

This Court should reverse, and hold that the FAC's allegations put the

individual Appellees properly on notice of the First Amendment retaliation claims

against them individually. It is for discovery to determine which Appellees, if any,

claims to have had no involvement in the adverse actions.

### III. THE TRIAL ERRED IN DISMISSING THE FIFTH AND SIXTH CLAIMS, ASSERTING GENDER AND/OR RACE-BASED HOSTILE WORK ENVIRONMENT AGAINST ALL DEFENDANTS

The Fifth Claim asserted gender-based discrimination under the Equal

Protection Clause. The Sixth Claim asserted, among other claims, race-based

hostile work environment under the Equal Protection Clause and Section 1981

through Section 1983. As to the individual Defendants, other than O'Grady, the

FAC alleged that each bears liability "by their facilitation of O'Grady's unlawful

conduct and actions and in the specific actions taken against Plaintiff in which they

participated and/or directed…." R. 37, ¶¶49, 54, Page ID 291-292.

The trial Court properly assigned Ms. Boxill's burden under each claim as

being the well-known elements of a Title VII gender or race claim. See, ECF 51,

Page ID 444, citing *Sharpe v. Curtin,* 259 F.3d 259, 267-68 (6th Cir. 2003). There

was no question that Ms. Boxill fell within both protected categories of that test [a

female and African-American], satisfying the first element. The Court dismissed

17

each claim, however, on the grounds that the FAC failed to put Defendants on notice that Appellant asserted gender or race-based *animus* in the treatment she received, and that the allegations insufficiently asserted the harassment was "severe *and* pervasive." Id., Page ID 445.

However, the FAC, as noted, alleged a continuing course of gender and race-based harassment over a period of months and years, which sufficiently altered Ms. Boxill's work environment so that she was unable to effectively perform as the Specialty Docket coordinator, followed by numerous reports by her to the named Defendants, all of which were rejected, ultimately culminating in the informal, then formal, demotion and unwarranted scrutiny.

While the Court in *Harris v. Forklift Sys, Inc*., 510 U.S. 17, 21 (1993) noted that the " mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not sufficiently affect the conditions of employment to implicate anti-discrimination laws, the Court went on to hold that those laws come into play when there is a "discriminatorily abusive work environment" that can detract from employees' job performance or keep them from advancing in their careers. (citations omitted). That is precisely what was alleged in the FAC.

Initially, the trial Court simply applied the wrong test to the question of the level of the harassment. The test is not whether the conduct was "severe and pervasive" but whether it is severe *or* pervasive. *Jordan v. City of Cleveland*, 464

F.3d 584, 597 (6th Cir. 2006); *Hawkins v. Anheuser Busch, Inc.,* 517 F.3d 321, 332 (6th Cir. 2008). And, as *Jordan* continued, whether the conduct is sufficient to establish a hostile work environment is "quintessentially a question of fact." *Jordan,* at 597.

Under this test, allegations that the harasser's conduct was "ongoing," "commonplace" or "continuing" is sufficient to support the pervasiveness requirement. *Hawkins, supra,* 517 F.3d at 334. The FAC meets this element.

Further, "sexual harassment" is a misnomer. The *gravamen* of such a claim is *gender-based harassment.* "The conduct underlying a sexual harassment claim need not be overtly sexual in nature." *Williams v. General Motors Corp*., 187 F.3d 553, 565 (6th Cir. 1999) (crediting such actions as plaintiff's supplies being glued to her desk, being hit by a box, and locked in her work area as being part of the "constellation of surrounding circumstances" relevant to the gender-based harassment claim)**.** As the Court later said in the context of racial harassment, in reversing summary judgment, evidence "such as the false accusation that Jackson took photographs in the plant or the acid valves incidents, that had 'no racial components in the description'" were improperly excluded by the trial Court. *Jackson v. Quanex Corp*., 199 F.3d 647, 661 (6th Cir. 1999).

These salient holdings were not acknowledged by the trial Court.

In that the question of an objectively hostile work environment turns on the constellation of surrounding circumstances, the trial Court's refusal to consider the Vanderkarr letter should be troubling. That a sitting judge was compelled to write a letter that addressed complaints made by Ms. Boxill but also specifically warned of another female's victimization by O'Grady, and concluded with a plea for action – which went ignored – simply hammers home the objectively hostile environment which faced Ms. Boxill every day. It further supports the inference that the Appellees facilitated O'Grady's unlawful conduct, and, thus, had participated in the constitutional violation. *Doe ex rel. Doe v. City of Roseville*, *supra,* 296 F.3d at 439.

Finally, the allegations that Glaeden and Brandt knew of Ms. Boxill's complaints of hostile work environment made during her exit interview and subsequent telephonic interview with Armitage, but the reports were never interviewed nor disclosed to the body of judges only cements the allegations of gender and racial *animus* of the Appellants. The trial Court dismissed these allegations as irrelevant because they occurred at or after, her separation. But the inference that the reports were suppressed is entirely relevant to *intent.*

The Fifth and Sixth Claims made out submissible claims of, respectively, gender-based and/or race-based hostile work environment and should not have been dismissed.

## IV.    THE TRIAL COURT ERRED IN DISMISSING THE CLAIM OF RETALIATION UNDER SECTION 1981 THROUGH SECTION 1983

The Sixth Claim asserted, additionally, retaliation under Section 1981 through Section 1983. Citing *McCormick v. Miami University,* 693 F.3d 654 (6th Cir. 2012), the trial Court held that Section 1981 is a cause of action unavailable against a state actor. However, that is not what *McCormick* held. That court stated that Section 1983 is the "exclusive mechanism to *vindicate violations of Section 1981* by a state actor…." *Id.,* at 661 (emphasis added). Hence, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights … secured by the Constitution *and laws*, shall be liable to the party injured in an action at law…." 42 U.S.C. §1983 (emphasis added).

The trial Court's holding, that Section 1983 *precludes* a remedy for Section 1981 violations, is simply wrong. The FAC pleaded that the individual Defendants violated Ms. Boxill's Section 1981 right to be free of retaliation *through Section 1983,* precisely in line with the authority granted by Section 1983.

This is not to say that Section 1983, being the exclusive vehicle for vindication, has no impact on the application of Section 1981. For example, presumably, a state entity cannot be held liable under *respondeat superior* for the

individual violations. However, that is not the case here. It is the individuals who are sued.

The trial Court thus erred in dismissing the retaliation claim premised upon the right afforded by Section 1981.

## V. THE TRIAL COURT ERRED IN DISMISSING THE FIRST CLAIM: CIVIL CONSPIRACY UNDER SECTION 1983

The First Claim asserted liability under Section 1983 for conspiracy to violate Ms. Boxill's right against retaliation under the First Amendment. It is this Claim which most illustrates the trial Court's excessively harsh reading of the FAC.

As addressed, *supra*, the FAC alleged the formation and implementation of a plan "the goal of which was, and is, to conceal discrimination and abusive treatment by FCMC Judges, and to silence those making complaints about matters of public concern;…." R. 37, ¶33. When the Defendants entered into this plan, and subsequent convocations specifically held in advance of specific overt acts were also pleaded.

A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir.2004) (quoting *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir.2000)). The Sixth Circuit has held that:

> [e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all the details of the illegal plan or all of the participants involved. All that must be

22

shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Weberg* at 526 (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir.1985)).

To prevail on a civil conspiracy claim, [plaintiff] must show that (1) a single plan existed, (2) [defendant] shared in the general conspiratorial objective to deprive [plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury" to [plaintiff]. *Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved.*

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (emphasis added; citations omitted).

Of central importance to this Court's consideration of the ruling below, this Court has stated that even a tacit understanding among defendants is sufficient, and that "[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Barger*, 931 F.2d 359, 369 n.6 (6th Cir. 1991) (citations omitted).

The trial Court gave short shrift to the civil conspiracy claim thus: "she offers no factual allegations to support such a conspiracy." R. 51, Page ID 428. Not so. Not only did the FAC allege the formation of a plan to silence female staff members, focusing on two specific females and their resultant unfortunate experiences, it further alleged that Brandt, upon receiving the original Vanderkarr missive warning against FCMC exposure as a result of O'Grady's creation of a

hostile work environment, conferred with the other Appellees and directed that Vanderkarr tone down the letter. R. 37, ¶23. Thereafter, Appellants intensified their previous actions against her, formally demoting her and instituting the surveillance of her and her staff. Under the case law of this Circuit, these allegations point to a meeting of the minds and overt acts intended to implement the unconstitutional plan.

The irony here is that, if the trial Court's interpretation of the pleading requirements comports with case authority, a plaintiff would be required to *plead* more facts than required to *survive* a Rule 59 motion following a verdict on the same claim. How can this be? Better, should this Court approve the trial Court's reading, to simply hold that no Section 1983 civil conspiracy claim may go forward unless plaintiff pleads a document executed by all defendants that memorializes the unconstitutional agreement. That done, plaintiff lawyers will not waste their time, nor any Court's time, pursuing such claims.

## CONCLUSION

For the reasons set forth above, Appellant respectfully requests that this Court reverse the judgment below, and remand for trial on all claims.

/s/Michael Garth Moore
Michael Garth Moore (025047)

*Attorney for Plaintiff-Appellant*

24

## CERTIFICATE OF COMPLIANCE

The undersigned certified that this Brief complies with the length limitations of Sixth Circuit R. App. Proc. 32(a)(7), containing 5,362 words.

/s/ Michael Garth Moore
Michael Garth Moore (025047)

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of June 2018, a copy of the foregoing was filed electronically. Notice of the filing will be sent to all aprties by operation of the Court's electronic filing system. Parties may access this filing through the Court's filing system.

/s/ Michael Garth Moore
Michael Garth Moore (025047)

*Attorney for Plaintiff-Appellant*

**DESIGNATED RELEVANT DISTRICT COURT DOCUMENTS**

| RECORD NO. | DESCRIPTION OF ITEM | PAGE ID RANGE |
| --- | --- | --- |
| 1 | 2016 Complaint | 1 – 25 |
| 37 | First Amended Complaint | 282 – 293 |
| 38 | Defendant's Motion to Dismiss | 294 – 316 |
| 51 | Opinion and Order | 412 – 449 |
| 53 | Notice of Appeal | 451 – 452 |